294 So.2d 633 (1973)
John DYKMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 44142.
Supreme Court of Florida.
December 12, 1973.
Rehearing Denied June 10, 1974.
*634 Joel Hirschhorn, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Peter F. LaPorte, Asst. Atty. Gen., for appellee.
DEKLE, Justice.
This cause comes to us pursuant to an order of the District Court of Appeal, Third District, transferring the case to this Court.[1] For the reasons set forth below, we accept the transfer only as to the trial court's upholding of the validity of Chapters 57-550 and 70-1000 relating to grand jury selection and remand the cause to the district court as to the remaining issues.
The basis of the transfer, as revealed by the motion therefor, was asserted to be the trial court's ruling on the constitutionality of various state statutes. Of the seven points raised on appeal, three (competency to stand trial, admissibility of certain hearsay evidence, and giving of certain jury instructions) are clearly outside the scope of our jurisdiction as to direct appeals under Article V, § 3(b)(1), of the State Constitution. Thus, jurisdiction in this Court, if present, must rest upon one of the remaining four issues raised on appeal.

JURISDICTION
The jurisdiction of this Court on direct appeal from an order of a trial court is governed by the provisions of Article V, § 3(b)(1) of our constitution. This section provides that the Supreme Court shall hear appeals from final judgments and orders of trial courts "initially and directly passing on the validity of a state statute or a federal statute or treaty, or construing a provision of the state or federal constitution." Although our direct appeals jurisdiction includes cases in which the trial court inherently passes upon the constitutionality of a statute, we may not accept a direct appeal based upon an inherent construction *635 of a constitutional provision; it is insufficient to invoke our direct appeals jurisdiction that there was an inherent construction of a constitutional provision in the judgment appealed from, but rather there must be an express ruling by the trial court which explains, defines, or overtly states a view which eliminates some existing doubt as to a constitutional provision in order to support a direct appeal.[2] Our direct appeals jurisdiction is not properly invoked merely because the trial court may apply a constitutional provision to the facts before it, but rather is properly invoked as to construction of a constitutional provision only where the trial court has expressly construed the constitutional provision involved.[3] With these principles in mind, we shall examine the several issues raised on appeal to determine if our direct appeals jurisdiction has been properly invoked.

VALIDITY OF SEARCH
By motions to suppress, appellant attacked the admissibility of various items of evidence obtained by the police in a search of his home. Appellant asserts that any "consent" that he gave to the search was vitiated by the fraud and duress he asserts were practiced upon him by the police officers conducting the search, thus invalidating the consent and making the search unreasonable in that the officers did not have a warrant and that the search was not, according to appellant, pursuant to a lawful arrest. A brief description of the background of the search may be helpful.
Appellant, a 78-year-old man, reported to the police that his wife was missing. Police officials later found the dismembered portions of a woman's body, wrapped in plastic bags, along the banks of a canal in the city; this body was identified as the body of appellant's wife (although appellant has made some effort to attack this identification). After the identification had been made, two police officers went to appellant's house and informed him that they would like to search the house in connection with the investigation of the disappearance of his wife. Appellant agreed to this proposition, and signed a consent form. Appellant now asserts that this apparent consent was invalid, in that (1) the police officers deceived him by not notifying him that a body identified as that of his wife had been discovered, (2) the situation of two policemen confronting a man of his age was fraught with coercion, (3) the police officers failed to warn appellant of his right not to consent to the search or any of his other "Miranda" rights, and (4) that he was not competent to give a valid consent. The trial court denied the motions to suppress.
Inasmuch as the question presently before us is whether or not our direct appeals jurisdiction has properly been invoked, we do not reach the merits of the issue as to whether the search in question was valid; our sole concern at present is whether this issue is properly before us. We hold that it is not.
In determining that the search in question was valid, the trial court did not have presented to it any issue of statutory validity, and did not rule on the validity of any statute, federal or state. Nor did the trial court expressly construe, define or overtly explain the meaning of any constitutional provision. In fact, it would be difficult to say that the trial court had even inherently construed a constitutional provision, and we have previously indicated that the inherent construction of a constitutional provision would not support a direct appeal to this Court.[4] In ruling upon the motions to suppress, the trial court merely applied undisputed propositions of law to the facts it found to exist in the instant case, and in so *636 doing found the motion not to be well-founded. Even if the trial court ruling on the motion is erroneous, it would not support a direct appeal to this Court. Accordingly, jurisdiction in this Court upon direct appeal may not be founded upon the issue of validity of the search.

PETIT JURY ATTACK
By motions, appellant attacked the petit jury venire from which a jury was to be impaneled to try him, asserting that the means by which such venire was selected were constitutionally improper in that certain "clearly identifiable groups" were excluded; appellant requested an evidentiary hearing on his allegations. This motion was not supported by affidavit based upon information and belief, nor did it state facts sufficient to raise a reasonable suspicion that the jury venire was in fact improperly drawn. We note that the motion in the instant case is identical to that considered in Rojas v. State, 288 So.2d 234 (Fla. 1973), in which we held that the denial of such a motion would not support a direct appeal to this Court, inasmuch as the trial court, by denying the motion, had not passed upon the validity of any statute nor expressly construed any constitutional provision. The motion in the instant case, and the trial court's ruling thereon, is distinguishable from that presented in Rojas only in the fact that the trial court in the instant case denied the request for an evidentiary hearing.
Our disposition of a similar challenge in Rojas upon the grand jury there involved is appropriate here as to the denial of an evidentiary hearing on the petit jury challenge. In Rojas we observed that a court is not required to permit a full-scale investigation of its jury array until it has been shown to be suspect, and that to make such a showing the challenger must assert facts tending to raise a reasonable doubt as to whether the panel may be improperly constituted.[5] In the instant case, appellant's attack on the petit jury panel did not present any factual basis upon which a reasonable suspicion of improper selection methods could arise, but only presented the bare conclusory statements of the motion, unsupported by so much as an affidavit based upon information and belief. Appellant asserts that the hearing he requested would have produced the evidence that the petit jury panel was improperly drawn, and directs our attention to State v. Covington, 258 N.C. 495, 128 S.E.2d 822 (1963), in which it was held that the trial court had erred in not allowing an evidentiary hearing and the subpoenaing of records in an attempt to show discrimination in the selection of a grand jury. However, there, unlike the instant case, the attack on the panel was supported by an affidavit of counsel, asserting certain facts based on information and belief, supporting the motion. Even this minimal factual support for the motion was lacking in the case before us today, appellant neither having made a showing that the panel was suspect nor having presented an affidavit showing a factual basis upon which such a suspicion could properly rest. We have only the bare conclusory statements of the motion itself; this is insufficient.
To summarize, the trial court in denying the appellant's request for an evidentiary hearing on the petit jury challenge did not pass upon the validity of any state or federal statute, nor did it construe any constitutional provision; rather, the trial court merely ruled that the motion did not present a sufficient basis for an evidentiary hearing, and that the attack upon the petit jury panel was not well founded. Our direct appeals jurisdiction may not properly be invoked upon this ground.

EVIDENTIARY HEARING ON GRAND JURY CHALLENGE
It appears that the appellant has waived his right to attack the composition *637 of the grand jury by failing to timely raise his objections pursuant to F.S. § 905.03, F.S.A., and F.S. § 905.05, F.S.A. Seay v. State, 286 So.2d 532 (Fla. 1973). Nonetheless, we shall proceed, as we did in Seay, to consider the merits of the grand jury attack, inasmuch as a justiciable issue of constitutionality if presented.
Appellant has asserted by various motions that the grand jury which returned the indictment against him was improperly constituted in that it discriminatorily excluded certain "identifiable groups" (specified in the motions) from the grand jury master list, and sought to prove his charge of discriminatory selection of the grand jury pool by deposing the grand jury commissioners and clerk of the grand jury commission and by examining the Dade County Grand Jury Master List. The motion for production of the grand jury master list was denied, as was the motion for permission to depose the chairman and clerk of the grand jury commission. Appellant also sought to dismiss the information against him, which was based upon the underlying indictment of the grand jury. These motions to dismiss involved two separate attacks:
(1) a claim that the composition of the grand jury pool was in violation of his rights under the due process and equal protection clauses of the Fourteenth Amendment of the U.S. Constitution, and
(2) a contention that Chapters 57-550 and 70-1000, providing for the means by which the grand jury pool was selected, were unconstitutional in various regards.
The second issue of statutory validity raised in these motions was separately dealt with in appellant's brief, and will be separately dealt with hereafter.
We first consider the assertion in (1) above that the composition of the grand jury pool was unconstitutionally discriminatory and the related complaint that appellant's rights have been violated by denying him the means by which to prove this allegation. Both of these propositions have been previously considered by this Court in Rojas v. State, supra, and have been decided adversely to appellant. The only material distinction between the attack made here and that made in Rojas is that appellant here, unlike the appellant in Rojas, wished to depose the chairman and clerk of the grand jury commission, on grounds that the deposition was material and relevant to his challenge to the grand jury pool. Here, as in Rojas, the appellant's assertions that the grand jury pool was improperly drawn were not supported by any factual assertions sufficient to raise a suspicion that the grand jury pool was in fact improperly constituted, and, as in Rojas, the attack was not supported by an affidavit setting forth facts sufficient to raise a reasonable suspicion that the grand jury pool might in fact have been improperly constituted.
Before a court will be required to permit a full-scale investigation of its jury panel, the panel must be shown to be suspect,[6] and no such showing was made in the instant case. This requirement of showing a factual basis for the challenge in order to require a full-scale investigation of the panel does not, of course, require that the challenger show the panel to be improperly constituted, but it does require that the challenger assert facts tending to raise a doubt as to whether the panel may be improperly constituted; if such factual assertions are made, an inquiry will then follow to see if such suspicion, duly alleged, is supported by proof. In the present case, no such factual basis was asserted for the challenge, and the trial court merely ruled upon a motion which it found not to be well founded.
The trial court did not deal with the validity of any statute in denying the request for evidentiary hearing, the motion *638 for production of the grand jury master list, or the motion to depose the chairman and clerk of the grand jury commission; nor did the trial court expressly construe any constitutional provision in so ruling. Accordingly, our direct appeals jurisdiction was not properly founded upon such rulings.
In denying that portion of the motion to dismiss which was based upon an assertion that the grand jury panel had been improperly drawn (other than the statutory attack discussed below), the trial court also did not pass upon the validity of any statute nor expressly and overtly construe any constitutional provision. Rather, the trial court passed upon a motion which was without any factual support. Accordingly, the only basis upon which we may review this case upon direct appeal is if our direct appeals jurisdiction has been properly invoked by appellant's assertion that Chapters 57-550 and 70-1000 are unconstitutional.

STATUTORY VALIDITY
The final point raised by the motion to dismiss was the constitutional validity vel non of Chapters 57-550, Laws of Florida, 1957, and 70-1000, Laws of Florida, 1970, setting forth the method by which the Dade County Grand Jury Pool was selected. By denying the motion to dismiss on this ground, the trial court inherently held these statutes to be constitutional under appellant's attack. We therefore have jurisdiction under Article V, § 3(b)(1), of our constitution to accept and hear a direct appeal upon this statutory point. This is founded upon the inherency doctrine as to a statute's invalidity, as distinguished from our constant rejection under the plain constitutional language of purported jurisdiction based upon "construing" the constitution. As we have so emphatically reiterated, one does not "construe" silently or "inherently", but only by express overt language and statements, which can offer some "construction" for our review.[7]
We find, however, that the resolution of this issue is controlled by our decisions in the companion cases of Seay v. State and Silva v. State, reported together at 286 So.2d 532 (Fla. 1973). The district court, of course, did not have the benefit of these later decisions when it transferred the immediate cause here. We affirm the ruling of the trial court upholding the validity of Chapters 57-550 and 70-1000 on the basis of these decisions.
Having thus determined the only issue properly before us on direct appeal, and in the interests of judicial efficiency, we remand all remaining issues to the District Court of Appeal for the Third District.[8]
It is so ordered.
CARLTON, C.J., and ROBERTS and ADKINS, JJ., concur.
ERVIN, J., dissents.
NOTES
[1] The District Court transferred the cause to this Court pursuant to Fla. Const. art. V, § 3(b) (1), F.S.A. vesting direct appeals jurisdiction in this Court where the trial court initially passed upon the constitutional validity of a state statute. Transfer is authorized by F.A.R. 2.1(a)(5)(d), 32 F.S.A.
[2] Rojas v. State, 288 So.2d 234 (Fla. 1973); Ogle v. Pepin, 273 So.2d 391 (Fla. 1973); Armstrong v. City of Tampa, 106 So.2d 407 (Fla. 1958).
[3] Rojas v. State, supra.
[4] Ogle v. Pepin, supra.
[5] Rojas v. State, supra. See also United States v. Hoffa, 349 F.2d 20 (CA 6, 1965), and Windom v. United States, 260 F.2d 384 (CA 10, 1958).
[6] Ibid.
[7] Ogle v. Pepin, 273 So.2d 391 (Fla. 1973); Armstrong v. City of Tampa, 106 So.2d 407 (Fla. 1958).
[8] We do not intimate by this decision that we could not, in our discretion, properly resolve all points raised by appellant, having properly acquired jurisdiction under Art. V, § 3(b) (1), it being clear that we may dispose of these points once jurisdiction is acquired. Roberts v. State, 181 So.2d 646 (Fla. 1966). We have not chosen to do so in this instance.