346 So.2d 998 (1977)
William Duane ELLEDGE, Appellant,
v.
STATE of Florida, Appellee.
No. 48081.
Supreme Court of Florida.
April 7, 1977.
Rehearing Denied June 30, 1977.
*999 Richard L. Jorandby, Public Defender and Daniel T. O'Connell, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen. and Richard W. Prospect, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This is an appeal from a sentence of death entered upon a plea of guilty to first degree murder in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County.
Appellant pleaded guilty to charges of rape and first degree murder in the death of Margaret Anne Strack. Pursuant to Section 921.141, Florida Statutes, a penalty trial was held in circuit court with the result that the jury recommended by vote of eleven to one that Elledge be put to death.[1] Nine days later, on March 27, 1975, the trial judge sentenced appellant to fifty years in prison for the rape charge and to death by electrocution as punishment for the first degree murder conviction.
Elledge arrived in the Hollywood, Florida area from Toledo, Ohio on or about August 18, 1974, accompanied by one Paula Fain. (His wife was living, he thought, in Colorado at the time.) He and Miss Fain took up residence in her brother's apartment in Hollywood. On Friday, August 23, 1974, Elledge and Fain quarreled, and, in his words, they "split up and [he] proceeded to the House of Foam Bar." After drinking for a few hours, Elledge returned to the apartment "to try and straighten things out" but there was nobody home. He drank heavily at a series of bars and later, after the last establishment had closed, broke into several buildings in a shopping plaza, netting about $180 in cash. He spent the rest of the night in a coffee shop, which he left at about 6:00 a.m., Saturday, August 24, 1974. Appellant then proceeded to the Normandy Hotel on Route A1A, where he rented an efficiency apartment for the next three days. On Saturday afternoon, he visited a bar called McGowan's Lounge, where he met the decedent. After drinking and talking for about an hour, Elledge and Ms. Strack went together to the room at the Normandy Hotel, where they smoked marijuana. She began to tease him sexually, but after he responded, she refused to participate in intercourse. They struggled, and, after momentarily agreeing to submit, the decedent began to scream. Elledge started choking her with his hands while engaging in sexual intercourse. After some fifteen minutes he realized that she was dead.
The disparity in size between decedent and appellant  she was larger than he  presented Elledge with some problems when he attempted to move the corpse. He dragged the body out of the apartment and then threw it from the back door down a stairway which led to a back porch. Elledge then proceeded to lug the corpse across a walkway to where Ms. Strack's vehicle was parked. After forcing the body into the back seat of her car, he drove to a nearby church parking lot, opened the car door, and let the corpse slide onto the macadam. When discovered, the body was almost totally nude, with a pair of panties down around ankles which had been tied with an electric cord.
Appellant continued to drive Ms. Strack's car until he wrecked it in an accident shortly after midnight on Sunday morning, August 25, 1974. On Sunday afternoon Elledge took a bus from Hollywood to Jacksonville, but not until after he had killed a watchman named Edward Gaffney at a Pantry Pride food store in Hollywood which he was robbing in order to obtain funds with which to escape. Early Monday morning, in the course of committing an armed robbery at a Jacksonville motel, Elledge killed the manager, Kenneth Nelson, when *1000 the latter freed himself from the bonds with which he had been tied and brandished an (unloaded) gun.
Appellant was arrested in Jacksonville for the Nelson murder. He made what was later judicially determined to be a valid waiver of his Miranda rights and confessed to all three murders. A tape recording of this confession was played at appellant's penalty trial for the Strack murder, the only case which is before us for consideration today,[2] and it is from the transcription of this recording that much of the foregoing factual summary comes.
On this appeal appellant raises four points. Apart from a challenge to the constitutionality of our death penalty statute, an issue which was decided adversely to appellant in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), aff'g, 315 So.2d 461 (Fla. 1975), these points relate to the fairness of the sentencing trial. The only issue which merits discussion is whether the trial court erred in allowing testimony and prosecutorial argument concerning the Gaffney and Nelson murders. Of course, we must also determine independently whether under all the circumstances the death penalty was appropriate punishment for the killing of Margaret Anne Strack.
As indicated above, at the conclusion of the sentencing trial the jury rendered its advisory sentence recommending by an 11-to-1 vote that defendant receive the death penalty. Section 921.141(2), Florida Statutes. On March 27, 1975, the trial judge entered his written sentence of death which included his findings in support of that sentence. Section 921.141(3), Florida Statutes. His findings were:
"B. As to the crime of Murder In The First Degree, this Court makes the following findings of fact:
(1.) The Defendant does have a significant history of prior criminal activity. The Defendant has been convicted of Murder In The First Degree in Jacksonville, Florida. He has also been convicted of felonious assault in the State of Colorado. This Defendant has been confined in various institutions for a great portion of his life for various other crimes.
(2.) The Defendant did not commit this Murder while under the influence of extreme mental or emotional disturbance. The Defendant was examined by two psychiatrists and both stated that at the time of the crime the Defendant understood and could appreciate the nature and consequences of his acts. Neither Doctor found nor reported that the Defendant was acting under the influence of extreme mental or emotional disturbance at the time of the crime. There was no indication of insanity.
(3.) The victim was not a willing participant in the Defendant's conduct and did not consent to these crimes.
(4.) The Defendant knowingly created a great risk of death to many persons in committing this murder and in the attempt to escape apprehension. In fact, the Defendant has admitted murdering Mr. Edward Gaffney in Hollywood, Florida only a few hours after committing this murder. Then, only a few hours later and while engaged in the perpetration of an armed robbery in Duval County, Florida and while attempting to obtain funds with which to escape, this Defendant shot and killed a Mr. Nelson.
This Defendant also created a great risk of death to Mrs. Nelson and the 16 year old grandson during the commission of the armed robbery in Duval County.
(5.) This murder was committed while the Defendant was raping the victim or shortly after raping the victim. The murder was committed for the purpose of avoiding arrest, as the victim had threatened to notify the police of the *1001 rape and after this threat by the victim, the Defendant committed this murder.
(6.) This murder was especially heinous, atrocious and cruel. The Defendant choked the victim until she was beating on the wall and gasping for air. He then threw her from the bed onto the floor and again choked her for approximately 15-20 minutes. During this period of time the Defendant was raping the victim.
After the rape and murder were completed, the Defendant then dragged the body of the victim to the door of the motel room, threw her down the steps and dragged her to an automobile. The Defendant then drove her to a church parking lot and threw her from the car. The Defendant then abandoned her almost nude body, with the legs tied together by an electric cord, in the church parking lot.
"Based upon the preceeding [sic] findings of fact, and based further upon the advisory sentence rendered to this Court by the twelve member jury, ten of whom voted to recommend the death sentence, and it being the opinion of this Court that there are sufficient aggravating circumstances existing to justify the sentence of death, and this Court, after weighing the aggravating and mitigating circumstances, being of the additional opinion that insufficient mitigating circumstances exist to outweigh the aggravating circumstances ..."
At the sentencing trial, without objection from defendant's counsel, Mrs. Katherine Nelson, the widow of the victim of the Jacksonville murder, testified in detail concerning the events surrounding that crime. In closing, the prosecutor made extensive reference to those events. The appellant now asserts that it was error to admit that testimony and to permit argument based upon it. It should be noted that appellant's trial counsel stipulated to the admissibility of the existence of the prior conviction for the Nelson murder. It is asserted here, however, that because the Nelson murder occurred after the killing in the instant case, the crime does not qualify as an aggravating circumstance under Section 921.141(5)(b), Florida Statutes (1975).[3] Such an assertion simply does not comport with a plain reading of the statute. It is clear that the Legislature referred to "previous convictions" and not "previous crimes." It is apparent that the appellant had at the time of the trial in this case been convicted of the Nelson murder. In Provence v. State, 337 So.2d 783 (Fla. 1976), we held that it was improper to consider under Section 921.141(5)(b), Florida Statutes, two armed robbery charges pending against Provence which predated the commission of the murder for which he was being tried. It was there emphasized that prior conviction was the essential element of that aggravating circumstance.
The question then arises whether it was proper to permit Mrs. Nelson to testify concerning the events which resulted in the conviction as opposed to restricting the evidence to the bare admission of the conviction. We conclude it was appropriate to admit Mrs. Nelson's testimony. This is so because we believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge. It is matter that can contribute to decisions as to sentence which will lead to uniform treatment and help eliminate "total arbitrariness and capriciousness in [the] imposition" of the death penalty. Proffitt v. Florida, supra, 96 S.Ct. at 2969.
Our conclusion in this regard is buttressed by the language of the statute:
"... In the proceeding, evidence may be presented as to any matter that *1002 the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitutions of the United States or of the State of Florida... ." (Emphasis supplied) § 921.141(1), Fla. Stat.
The testimony of Mrs. Nelson obviously related to the aggravating circumstance delineated in Section 921.141(5)(b), Florida Statutes. If it be appropriate to admit the testimony, then clearly it was appropriate for the prosecutor to comment upon it in arguing for the death penalty. We do not perceive it to have been the intent of the Legislature that sentencing proceedings under Section 921.141, Florida Statutes, be as antiseptic as appellant contends.
The testimony concerning appellant's confession of the Gaffney murder and argument by the prosecutor thereon presents an entirely different question. Admittedly the testimony by the police officer related to that confession was not objected to by appellant's trial counsel, but that should not be conclusive of the special scope of review by this Court in death cases. Admission of evidence of the Gaffney murder is proscribed by our decision in Provence, supra, because the charge had not resulted in a conviction at the time of the trial in the instant case. It was, therefore, a nonstatutory aggravating factor. But was the error harmless because of the lack of objection and the existence of substantial additional aggravating circumstances? We believe not. This question has not been heretofore squarely considered by this Court, but a reading of Sawyer v. State, 313 So.2d 680 (Fla. 1975), and the analysis of that decision by the United States Supreme Court in Proffitt, supra, provide indications of the proper result. As pointed out in footnotes 8 and 14 to the Proffitt plurality opinion:[4]
"8. In one case the Florida Court upheld a death sentence where the trial judge had simply listed six aggravating factors as justification for the sentence he imposed. Sawyer v. State, 313 So.2d 680 (1975). Since there were no mitigating factors, and since some of these aggravating factors arguably fell within the statutory categories it is unclear whether the Florida Court would uphold a death sentence that rested entirely on nonstatutory aggravating circumstances. It seems unlikely that it would do so since the capital-sentencing statute explicitly provides that `[a]ggravating circumstances shall be limited to the following [eight specified factors].' § 921.141(5) (Supp. 1976-1977). (Emphasis added.) There is no such limiting language introducing the list of statutory mitigating factors. See § 921.141(6) (Supp. 1976-1977). See also n. 14 infra."

"14. The petitioner notes further that Florida's sentencing system fails to channel jury or judge discretion because it allows for consideration of non-statutory aggravating factors. In the only case to approve such a practice, Sawyer v. State, 313 So.2d 680 (1975), the Florida Court recast the trial court's six nonstatutory aggravating factors into four aggravating circumstances  two of them statutory. As noted earlier, it is unclear that the Florida Court would ever approve a death sentence based entirely on nonstatutory aggravating circumstances. See n. 8, supra." 96 S.Ct. at 2965, 2968.
It appears that the United States Supreme Court does not fault a death sentence predicated in part upon nonstatutory aggravating factors where there are no mitigating *1003 circumstances. The absence of mitigating circumstances becomes important, because, so long as there are some statutory aggravating circumstances, there is no danger that nonstatutory circumstances have served to overcome the mitigating circumstances in the weighing process which is dictated by our statute. Section 921.141(2)(b) and (3)(a), Florida Statutes. State v. Dixon, 283 So.2d 1 (Fla. 1973), teaches that:
"... [T]he procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present... ." 283 So.2d at 10.
If this be so, then regardless of the existence of other authorized aggravating factors we must guard against any unauthorized aggravating factor going into the equation which might tip the scales of the weighing process in favor of death.
In the case sub judice, it does not expressly appear from the specific findings of fact that the trial judge found the existence of any mitigating circumstances. His written findings expressly negate the existence of certain mitigating circumstances. But the sentencing order concludes:
"... [I]t being the opinion of this court that there are sufficient aggravating circumstances existing to justify the sentence of death, and this court after weighing the aggravating and mitigating circumstances, being of the additional opinion that insufficient mitigating circumstances exist to outweigh the aggravating circumstances ..."
In order to have weighed the aggravating circumstances against the mitigating circumstances, the court must have found some of the latter. Likewise, in concluding "that insufficient mitigating circumstances exist to outweigh the aggravating circumstances" he implicitly found some mitigating circumstances to exist. But did the judge take into account in the weighing process the nonstatutory aggravating circumstance? He did. In finding that the appellant knowingly created a great risk of death to many persons in committing the murder and in an attempt to escape apprehension, he stated:
"... In fact, the defendant has admitted murdering Mr. Edward Gaffney in Hollywood, Florida, only a few hours after committing this murder... ."
Would the result of the weighing process by both the jury and the judge have been different had the impermissible aggravating factor not been present? We cannot know. Since we cannot know and since a man's life is at stake, we are compelled to return this case to the trial court for a new sentencing trial at which the factor of the Gaffney murder shall not be considered. See Miller v. State, 332 So.2d 65 (Fla. 1976); Messer v. State, 330 So.2d 137 (Fla. 1976). This result is dictated because, in order to satisfy the requirements of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the sentencing authority's discretion must be "guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." (Emphasis supplied) Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913.
In that a new sentencing trial is required, we deem it appropriate to comment on one other aspect of the trial court's sentencing order. In finding B.(4.) ante p. 1000, the court concluded that appellant created a great risk of death to many persons in connection with the armed robbery in Jacksonville during which Mr. Nelson was killed. Although this would have been a perfectly appropriate aggravating factor relative to sentence for the Nelson homicide, we conclude that it was inappropriate to consider in connection with the sentence for the Strack murder. The events surrounding Mr. Nelson's death in Jacksonville cannot reasonably be said to be part of the *1004 res gestae of the Strack murder. It is only conduct surrounding the capital felony for which the defendant is being sentenced which properly may be considered in determining whether the defendant "knowingly created a great risk of death to many persons." Section 921.141(5)(c), Florida Statutes.
The sentence of death is set aside, and this cause is remanded to the trial court for a new sentencing trial to be held in accordance with the views expressed herein.
BOYD, ENGLAND and HATCHETT, JJ., concur.
OVERTON, C.J., and ADKINS and ROBERTS (Retired), JJ., concur in part and dissent in part and would affirm the judgment and sentence of the trial court.
NOTES
[1] As set out post p. 1001, the trial court's order suggests that ten members of the panel voted to sentence Elledge to death. However, the trial transcript indicates that, at the time the jury was polled, only one member dissented from the recommendation of death.
[2] As was adduced at the Strack penalty trial, Elledge was sentenced to life imprisonment for the Nelson murder. There had been no disposition of the Gaffney murder charge at the time of the Strack trial.
[3] § 921.141(5)(b), Fla. Stat.:

"The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person."
[4] It should be noted that in Proffitt a nonstatutory aggravating circumstance was present, but the trial court also found specifically that none of the statutory mitigating circumstances existed. 315 So.2d at 466-67.