407 So.2d 885 (1981)
Marvin FRANCOIS, Appellant,
v.
STATE of Florida, Appellee.
No. 54461.
Supreme Court of Florida.
October 15, 1981.
Rehearing Denied January 28, 1982.
*887 Bennett H. Brummer, Public Defender, and Warren S. Schwartz, Asst. Public Defender, Miami, for appellant.
Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
This cause is before the Court on appeal of a judgment of the Circuit Court of the Eleventh Judicial Circuit, Dade County, which adjudicated the appellant guilty of six counts of murder in the first degree, along with additional crimes, pursuant to which six sentences of death were imposed upon him. This Court has jurisdiction of his appeal. Art. V, § 3(b)(1), Fla. Const.
The appellant was convicted on six counts of first-degree murder, two counts of attempted first-degree murder, and three counts of robbery. The evidence showed that in the early evening of July 27, 1977, John Errol Ferguson gained admittance to the home of Livingston Stocker in the Carol City section of Miami by posing as a power company employee. Margaret Wooden was present in the home at the time. After entering, Ferguson bound Wooden's hands and blindfolded her. Then he admitted Beauford White and the appellant Marvin Francois. The three men searched the house for valuables, taking some firearms and some of Margaret Wooden's jewelry. Then the three men covered their faces with masks.
Shortly thereafter Livingston Stocker arrived home with five friends  Henry Clayton, Johnny Hall, Randolph Holmes, Charles Stinson, and Gilbert Williams. The intruders tied the six men up and took their valuables. Still later Michael Miller, Livingston Stocker's nephew, arrived at the house. He too was tied up and robbed.
The appellant's mask then slipped off and he declared that all the victims would have to be killed. Ferguson took Margaret Wooden and Michael Miller into a bedroom and shot them both in the head with a pistol. Appellant Francois took the other six victims into another bedroom, made them lie down on the floor, and shot them each in the head with a shotgun.
After the three attackers departed, Margaret Wooden ran to a neighbor's house to call for help. When the police arrived they found Johnny Hall crawling toward the back door of the house. Both Wooden and Hall survived and testified at trial. The other six victims died. At trial, Johnny Hall identified the appellant as the man who shot him and five others with a shotgun. Theresa Rolle testified that Francois admitted to her his participation in the murders.
Adolpus Archie testified that he took Francois, Ferguson, and White to Stocker's home in his car and waited for them down the street. He testified further that it was unnecessary for him to pick the other three up and drive them away since they departed the scene in Stocker's car. Archie met the other three later and assisted in disposing of evidence. He testified that appellant Francois told him that the real purpose of the venture was not robbery but murder. Francois stated further, according to Archie's testimony, that he and Ferguson had *888 done the shooting. Archie pled guilty to second-degree murder and received a sentence of twenty years imprisonment.
Prior to trial, appellant moved to dismiss the indictment on the ground that it was issued by a grand jury selected under a procedure that systematically excludes minorities from participation. He moved also for an evidentiary hearing on the motion, and for discovery of the master list from which grand jurors are drawn.
Appellant, in essence, presents three issues on appeal of the judgments of conviction. He contends first that the evidence presented at trial was insufficient to support the judgments of conviction. We find, however, that the judgments were rendered pursuant to jury verdicts that were based on competent, substantial evidence. Appellant's first argument is without merit.
Secondly, appellant argues that he should have been granted a new trial because of newly discovered evidence and because the evidence in question was known to the state at the time of trial but not disclosed to him. Appellant's motion for new trial alleged that shortly before sentencing a woman named Sheila Walker approached defense counsel and said that appellant was with her at 11:00 p.m. on the night of the murders. The motion asserted that this was newly discovered evidence and that the state had suppressed information concerning the identity and whereabouts of this witness. If anyone had known about this witness and her possible value to the accused for alibi purposes, however, it would have been the defendant. Furthermore, the evidence showed that the murders were committed well before 11:00 p.m., so the testimony it was alleged the witness would give would not have been probative and would not have changed the outcome. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Thomas v. State, 374 So.2d 508 (Fla. 1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980). Therefore, appellant's contentions on this issue are without merit.
Thirdly, appellant contends that the judgments must be reversed because to try a defendant under an indictment returned by a grand jury from which persons of a particular race have been systematically excluded denies equal protection of the law. Appellant's motion to dismiss alleged that there had been for a number of years a substantial disparity between the percentage of blacks and Hispanics in Dade County's eligible population and the percentage serving on grand juries. He contends that in order for him to have made out a prima facie case of discriminatory selection, which would have required a showing of justification from the state, he needed to have access to the grand jury master list and also should have been afforded an evidentiary hearing.
Appellant argues that his affidavits and proffered exhibits demonstrated a disparity that was unlikely to be due to chance, thus entitling him to discovery of the master list and an evidentiary hearing. See Castanda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); Dykman v. State, 294 So.2d 633 (Fla. 1974); Rojas v. State, 288 So.2d 234 (Fla. 1973); Seay v. State, 286 So.2d 532 (Fla. 1973), cert. denied, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). In response the state argues that the appellant waived his right to raise this issue by not timely filing his motion. The state refers us to section 905.05, Florida Statutes (1977), which provides:
A challenge or objection to the grand jury may not be made after it has been empaneled and sworn. This section shall not apply to a person who did not know or have reasonable ground to believe, at the time the grand jury was empaneled and sworn, that cases in which he was or might be involved would be investigated by the grand jury.
We find that this statute does not apply to the instant case. Rather, we conclude that the time limit for the filing of the motion to dismiss was governed by Florida Rule of Criminal Procedure 3.190(c), which provides that a motion to dismiss is to be made either before or upon arraignment unless *889 the court grants further time. The motion here was timely filed because the court granted the appellant additional time in which to file his motion.
Although we find that the motion was timely filed, we hold that appellant waived his right to appeal the denial of his motions for discovery, for a hearing, and to dismiss the indictment, by failing to diligently pursue the matter and by inducing the trial court to rule against him. The record shows that appellant's motion came up for consideration at a pre-trial hearing held January 3, 1978, at which other motions were argued. At that hearing appellant's counsel stated:
The only other motion that I filed is the motion to dismiss the Grand Jury indictment based on the Blue Ribbon Grand Jury and requesting an evidentiary hearing on that point, but it  I am going to forego any arguments on that. In fact, I am not going to ask for a hearing on it until a later date simply because I do not think there is any way I can get this case to trial by next week.
Transcript of Proceedings, vol. I, at 12-13. Further pre-trial hearings were held on February 21 and 23, 1978, and again the matter was not brought up by defense counsel. On February 27 defense counsel declared that he was ready for trial. However, the trial was not finally scheduled to begin until April 17. On that day defense counsel, Mr. Diamond, brought the motion to dismiss to the court's attention and the following exchange ensued:
MR. DIAMOND: Your Honor, just before we start on the motion to suppress, I am not sure what pretrial motions have at this point been granted and have not, because of the fact that we have three defendants. Now there are four. Well, four defendants have been charged throughout.
There were motions to adopt based on all motions previously filed. I filed a motion to dismiss the grand jury indictment in this case originally. I believe it was dismissed  I mean, it was not dismissed by this Court. It was dismissed in other courts with regard to these defendants. This Court did not dismiss the indictments against them.
THE COURT: That is true. I find the grand jury was legally constituted, and I deny the motions.
MR. DIAMOND: Fine.
Transcript of Proceedings, vol. I, at 40.
This exchange reveals that defense counsel practically invited the court to rule against him. A favorable ruling on the motion would have resulted, possibly, in the convening of a new grand jury and the issuance of a new indictment, or at least in a delay of the trial for purposes of discovery or an evidentiary hearing or both. Yet the record also reveals that appellant and his counsel did not press for a pretrial ruling because they did not want to delay the trial. The defense tactic was to delay the deciding of the claim of grand jury illegality until just before trial, in hopes of upsetting the conviction on appeal. See Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). We cannot condone such tactics and therefore refuse to consider this issue on appeal.
Finding no merit in any of appellant's challenges to the convictions, we affirm them.
We come now to consideration of the sentencing proceeding and sentences of death. Appellant presents a series of arguments with regard thereto.
Appellant argues that section 921.141, Florida Statutes (1977), violates due process by arbitrarily establishing a presumption that death is the appropriate sentence in a felony murder situation, because the existence of the underlying felony can be used to aggravate the capital felony. Appellant has no standing to make this argument since the evidence shows that he was the actual perpetrator of five premeditated murders and was a first-degree principal in one other murder. Moreover, we recently rejected this argument when it was presented by an appellant who has *890 standing to raise it. White v. State, 403 So.2d 331 (Fla. 1981).
The judge found that appellant had twice previously been convicted of a violent felony, section 921.141(5)(b), Florida Statutes (1977); that in committing the crimes appellant knowingly created a great risk of death to many persons, Id. § 921.141(5)(c); that the crime was committed for the purposes of avoiding or preventing lawful arrest and disrupting law enforcement, Id. § 921.145(5)(e) & (g); that the crimes were committed during the course of a robbery and for pecuniary gain, Id. § 921.141(5)(d) & (f); and that the capital felonies were especially heinous, atrocious, and cruel. Id. § 921.141(5)(h). The judge also found that there were no mitigating circumstances.
Appellant contends that the finding that he had been previously convicted of violent felonies was not supported by sufficient evidence. At the sentencing hearing the state called as a witness a court clerk who brought along court files from two prior criminal prosecutions of a person named Marvin Francois. Copies of documents from those files  a judgment of conviction for robbery and a judgment of conviction for aggravated battery and possession of a firearm during a criminal offense  were admitted into evidence. Appellant claims that these documents were an insufficient basis upon which to conclude that he had the prior convictions. He argues that the state should have been required to do more in order to prove beyond a reasonable doubt that he was the same Marvin Francois named in the documents. We disagree and hold that the copies of judgments of conviction for violent felonies naming Marvin Francois as the convicted defendant constituted sufficient proof of the aggravating factor. Appellant could have rebutted the information or challenged the accuracy of the documents had he chosen to try to do so.
In further carrying its burden of showing this aggravating circumstance, the state presented the testimony of the assistant state attorney who had prosecuted appellant on his aggravated assault charge. On cross-examination, defense counsel asked the witness whether, the judgment was based upon a negotiated plea with a sentence of probation. The court sustained the state's objection to this inquiry, reasoning that the judgment of conviction spoke for itself in establishing the factor of previous conviction of a violent felony.
Appellant argues that the court erred in not allowing inquiry into the background of the aggravated assault conviction. In Elledge v. State, 346 So.2d 998 (Fla. 1977), the state at the sentencing hearing called as a witness the relative of the victim of a murder, other than the one for which the defendant was being tried, to testify about the details of the other murder. This Court held that this was appropriate "because we believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case." Id. at 1001. Conversely, a defendant must be allowed to present evidence pertaining to the degree of his or her involvement in and the circumstances of the events upon which previous convictions are based. This principle does not compel the conclusion, however, that the court's sustaining the objection requires vacation of the death sentence. The defense made no proffer of its own of matters relating to the gravity of appellant's previous criminal activity. The defendant was of course perfectly free to do so. It would be a different case if the court had excluded evidence proffered by the defendant rebutting the state's evidence of aggravation or relative to any matter in mitigation. See Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Miller v. State, 332 So.2d 65 (Fla. 1976).
The appellant argues that the trial court erred in finding that the capital felonies were especially heinous, atrocious, or cruel. We hold that the finding can be sustained on the basis of the mental anguish inflicted on the victims as they waited for their "executions" to be carried out. White v. State, 403 So.2d 331, No. 54,292 (Fla. 1981).
*891 The appellant also argues that the trial court erred in finding that in committing the capital felonies, the appellant knowingly created a great risk of death to many persons. We agree that this finding was error. There were six separate homicides, but the court's conclusion that many other persons were endangered was based on the speculation that any others who approached the house would have been killed. The existence of aggravating circumstances may not be established by speculation. White v. State, 403 So.2d 331, (Fla. 1981).
The appellant argues further that the trial court erred by separately considering the facts that the murders were committed in the course of robberies and that they were committed for pecuniary gain. Separate consideration of factors that are essentially based on the same aspect of the crimes is error. White v. State; Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). By finding both statutory aggravating circumstances, the trial court committed such error.
Appellant makes the same kind of "doubling up" argument with respect to the trial court's findings that the murders were committed to avoid or prevent a lawful arrest and that they were committed to disrupt or hinder the enforcement of the laws. Again, we find merit to appellant's argument and hold that the principle against double consideration of a single factor in aggravation was violated by the sentencing judge. White v. State; Provence v. State.
Although the trial court's sentencing errors resulted in the recitation of three statutory aggravating circumstances that were not properly established by the evidence, we find that the sentences of death should still be upheld. Where the consideration of erroneous aggravating circumstances does not interfere with the weighing process prescribed by statute because there are no mitigating circumstances to weigh, no resentencing is required. See Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979); Elledge v. State, 346 So.2d 998 (Fla. 1977).
The appellant, having been twice previously convicted of felonies involving the use or threat of violence, was convicted of six premeditated, execution-style murders committed in the course of committing robbery, and for the purpose of eliminating the witnesses to his crimes of robbery. The murders were especially heinous, atrocious, and cruel. There were four statutory aggravating circumstances. There were no mitigating circumstances. The jury recommended death. We affirm the judgments of conviction and the sentences of death.
It is so ordered.
ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., dissents with an opinion.
SUNDBERG, Chief Justice, dissenting.
I dissent from the majority's refusal to consider the issue of systematic racial underrepresentation on Dade County grand juries. The majority asserts that defense counsel "practically invited the court to rule against him" on the grand jury issue in order to secure a reversal of the conviction on appeal. That is a heady accusation which, to my mind, is unsubstantiated in the record.
On January 3, 1978, counsel for appellant filed a motion to dismiss the indictment and request for evidentiary hearing on the grand jury issue. The motion was accompanied by an impressive array of over seventy pages of affidavits and supporting data. If the record reveals anything, it reveals that appellant wanted to defer consideration of the grand jury claim simply in order to prepare adequately for that and the other numerous issues in this complex trial. When the motion came up for argument (timely, as the majority notes), the court denied it out of hand, without benefit of evidentiary hearing. The trial judge did not find the claim to have been waived, but rather specifically denied it on the merits. *892 At that point counsel could do no more to assert his claim.
Because I believe appellant proffered material facts to establish a prima facie claim of an illegally composed grand jury, he had a constitutional right to an evidentiary hearing on that issue. Coleman v. Alabama, 377 U.S. 129, 84 S.Ct. 1152, 12 L.Ed.2d 190 (1964); Dykman v. State, 294 So.2d 633 (Fla. 1973). The majority denies appellant that right because, on the most sparse of records, it perceives that counsel invited that court error. I would not be so quick to impute perfidious motives to defense counsel.