541 So.2d 1143 (1989)
William EUTZY, Appellant,
v.
STATE of Florida, Appellee.
William EUTZY, Petitioner,
v.
Richard L. DUGGER, et al., Respondents.
Nos. 73894, 73790.
Supreme Court of Florida.
March 28, 1989.
*1144 William H. Allen, Arvid E. Roach II, James R. Murray and Timothy C. Hester of Covington & Burling, Washington, D.C.; and Michael Griffith of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen. and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee/respondents.
PER CURIAM.
William Eutzy, a prisoner under sentence of death for whom a death warrant has been signed, appeals the trial court's denial of his second motion to vacate conviction and sentence made pursuant to Florida Rule of Criminal Procedure 3.850, petitions this Court for a writ of habeas corpus, and requests a stay of execution. We have jurisdiction, pursuant to article V, sections 3(b)(1) and (9), Florida Constitution, and deny all relief requested.
Eutzy was convicted of the first-degree murder of a Pensacola taxicab driver. Finding three aggravating circumstances and no mitigating circumstances, the trial court declined to follow a jury recommendation of life and imposed a sentence of death. Eutzy's conviction and sentence were affirmed by this Court in Eutzy v. State, 458 So.2d 755 (Fla. 1984), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985). On appeal, two of the three aggravating factors found by the trial court were upheld: that Eutzy had been previously convicted of a violent felony and that the murder was committed in a cold, calculated, and premeditated manner. Id. at 757-58. In 1986, a petition for writ of habeas corpus was denied by this Court. Eutzy v. Wainwright, 500 So.2d 544 (Fla. 1986). The trial court denied a rule 3.850 motion to vacate conviction and sentence in September 1987. The denial was affirmed by this Court in Eutzy v. State, 536 So.2d 1014 (Fla. 1988). While a motion for reconsideration which was later denied was pending before this Court, a death warrant was signed. Execution is scheduled for April 5, 1989. A second rule 3.850 motion to vacate conviction and sentence was summarily denied by the trial court on March 17, 1989. Eutzy now appeals that denial, *1145 seeks a writ of habeas corpus, and requests a stay of execution.

RULE 3.850 MOTION
The trial court denied the rule 3.850 motion without an evidentiary hearing, finding that each of the five claims raised in the successive motion constituted an abuse of process because Eutzy failed to demonstrate that the claims were not known or could not have been known to him at trial or at the time his initial rule 3.850 motion was filed. The trial court further found that none of the recent federal decisions which Eutzy argues should be given retroactive application justify consideration of the claims. We agree that all claims raised are procedurally barred. The rule 3.850 motion and record in this case conclusively show that Eutzy is not entitled to relief. Gorham v. State, 521 So.2d 1067 (Fla. 1988); Harich v. State, 484 So.2d 1239 (Fla. 1986). Therefore, we affirm the trial court's summary denial of relief.
Eutzy's first claim is based on the United States Supreme Court's decision in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), in which the Court held that presentation of victim impact evidence to a jury in a capital case violated the eighth amendment to the United States Constitution. During the evidentiary hearing held in connection with Eutzy's first rule 3.850 motion, Eutzy's trial counsel testified that a plea arrangement to allow Eutzy to plead guilty to second-degree murder was aborted because the victim's family objected to the agreement. Eutzy contends that the victim's family's involvement in pretrial plea negotiations was improper under Booth. Even if the Booth decision could be read to apply in this case, appellant is procedurally barred from claiming relief. We recognized in Grossman v. State, 525 So.2d 833, 842 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), that there is nothing in Booth which suggests that that decision should be retroactively applied to cases in which the claim was not preserved by a timely objection. As the trial court correctly found, "[t]he record demonstrates that the victim's family's involvement was known to the defense counsel and no objection was raised at trial nor was this matter raised on appeal or raised in Eutzy's initial Rule 3.850."
Eutzy's second and third claims, that his death sentence must be vacated as an unconstitutional deprivation of his sixth amendment right to a jury trial on the elements of capital murder and that Florida's death penalty statute is unconstitutional because it imposes an unlawful presumption that death is the appropriate penalty, which are based on the recent decision of the Ninth Circuit Court of Appeals in Adamson v. Ricketts, 865 F.2d 1011 (9th Cir.1988), are procedurally barred because they could have been raised on direct appeal. These claims are also barred by the provisions of rule 3.850. Rule 3.850 requires motions to vacate conviction and sentence to be filed within two years after the judgment and sentence become final unless 1) the facts upon which the claim is predicated are unknown and could not have been ascertained by the exercise of due diligence, or 2) the fundamental constitutional right asserted was not established within the applicable time period and has been held to apply retroactively. Because neither of the two exceptions to the two-year time period has been established, these claims should have been raised by April 15, 1987, two years after Eutzy's petition for certiorari was denied by the United States Supreme Court. The facts upon which these claims are based were not only known prior to the expiration of the two-year period but, as noted above, were known prior to Eutzy's direct appeal. Further, decisions of an intermediate federal court, such as Adamson, are not susceptible to retroactive application under our decision in Witt v. State, 387 So.2d 922, 930 (Fla.) (only this Court and the United States Supreme Court can adopt a change of law sufficient to precipitate a post-conviction challenge to a final conviction and sentence), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).
Eutzy's fourth claim, that his 1958 Nebraska conviction which was the sole *1146 evidence of a prior conviction of a violent felony was secured in violation of his constitutional rights and cannot serve as a basis for his death sentence, is likewise procedurally barred because he failed to raise the claim on direct appeal, in his first rule 3.850 motion, or in accordance with the two-year provision of rule 3.850. Bundy v. State, 538 So.2d 445 (Fla. 1989). Eutzy contends that he is entitled to relief under the United States Supreme Court's decision in Johnson v. Mississippi, ___ U.S. ___, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), in which the Court set aside the defendant's death sentence because his New York conviction for assault, which was the basis for the aggravating circumstance of a prior violent felony, had been reversed.
On March 15, 1989, Eutzy filed a complaint in the United States District Court for the District of Nebraska, pursuant to 42 U.S.C. section 1983, seeking to have the 1958 conviction expunged from the records of the Douglas County, Nebraska, District Court. He argues that "assuming that the prior conviction is vacated or reversed by the Nebraska courts on the basis that it was obtained in violation of [his] constitutional rights, it cannot constitutionally be relied on as grounds for sentencing [him] to death." As the trial court found, "Eutzy raised this issue in his initial Rule 3.850 in a slightly different argument, however, the validity of the 1958 Nebraska conviction was known to Eutzy and could have been raised" at that time. Eutzy concedes that he was aware of some of the facts underlying this claim but contends that a psychiatric opinion concerning his mental capacity at the time of the 1958 offense and his guilty plea to that offense was only recently obtained. With the exercise of due diligence, Eutzy's mental capacity at the time of the 1958 offense could have been ascertained prior to the expiration of the two-year period. Further, Eutzy's Nebraska conviction has been final for over thirty years. The fact that Eutzy is seeking collateral review of this conviction does not entitle him to relief under Johnson. Bundy, 538 So.2d at 447.
Eutzy's fifth claim, that he was denied his constitutional right to a competent psychiatric evaluation, is also procedurally barred. Prior to the filing of the motion at issue, Eutzy was examined by Dr. Merikangas, a psychiatrist. Dr. Merikangas determined that at "the time of the crime [Eutzy] was suffering from starvation, the effects of stimulants, and chronic substance and alcohol abuse." In his opinion these factors resulted in "impaired judgment and extreme emotional disturbance" at the time of the murder. Due to possible hypoglycemia, Dr. Merikangas believed that it is also "most unlikely that he was able to think rationally, logically or normally" at the time of the murder. Dr. Merikangas also expressed his belief that further diagnostic testing "would demonstrate organic deficits of the brain." Eutzy maintains that the psychiatric evaluations he received prior to trial were deficient because the court-appointed psychiatrists who examined him failed to consider issues relating to organic brain disorders, chronic alcoholism, and other neurological issues. The trial court summarily rejected this claim, finding it amounted to an abuse of process.
Our decision in State v. Sireci, 502 So.2d 1221 (Fla. 1987), which was based on the "unique facts" of that case, id. at 1224, does not entitle Eutzy to bring this claim outside the two-year period set forth in rule 3.850. While we may not agree with the trial court that the facts underlying this claim "were known to Eutzy and were raised in his initial motion in a different claim," these facts could have been reasonably ascertained prior to the first rule 3.850 motion and prior to the expiration of the two-year period of rule 3.850. In fact, prior to his first rule 3.850 motion, Eutzy was evaluated by a psychiatrist, who considered his history of substance abuse and determined that "[t]here was no evidence of any psychiatric condition that might be attributed to organic etiology or any evidence of a psychiatric illness of psychotic dimensions." Under the circumstances, the trial court's summary denial of this claim was proper.

PETITION FOR WRIT OF HABEAS CORPUS
Eutzy seeks a writ of habeas corpus based on this Court's decision in Rogers v. *1147 State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). In Rogers, we defined the cold, calculated, and premeditated aggravating factor as requiring proof beyond a reasonable doubt that the murder was the result of a careful plan or prearranged design. Id. at 533. Eutzy contends that this narrowing interpretation of section 921.141(5)(i), Florida Statutes (1985), is a fundamental change in the law which under this Court's opinion in Witt, 387 So.2d 922, should be given retroactive effect. He argues that because there is no evidence of a careful plan or prearranged design this aggravating factor must be held invalid. Eutzy further argues that with only one aggravating factor remaining, which was based on a twenty-five-year-old conviction and which was given little weight by the trial court, the override sentence should not be allowed to stand.
Our holding in Rogers did not amount to a "jurisprudential upheaval" requiring retroactive application. The definition of the term "calculated," as used in section 921.141(5)(i), adopted in that case was merely an "evolutionary refinement" in the law, "arising from our case-by-case application of Florida's death penalty statute." 387 So.2d at 929-30 (definitions for statutory mitigating circumstances were evolutionary developments in Florida's death penalty statute). As explained in Witt, to allow such refinements to abridge the finality of judgments would "destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit." Id.
We also reject Eutzy's claim that even if our holding in Rogers is not to be given retroactive effect, because he challenged this aggravating factor on direct appeal and in the prior rule 3.850 motion, he is entitled to reconsideration of his original challenge. As noted in Kennedy v. Wainwright, 483 So.2d 424, 426 (Fla.), cert. denied, 479 U.S. 890, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986), "[i]t is only in the case of error that prejudicially denies fundamental constitutional rights that this Court will revisit a matter previously settled by the affirmance of a conviction or sentence." Eutzy has shown no fundamental constitutional infirmity entitling him to relief.
Accordingly, we affirm the trial court's summary denial of Eutzy's rule 3.850 motion, and deny both his petition for writ of habeas corpus and request for stay of execution.
It is so ordered.
OVERTON, Acting C.J., and McDONALD, SHAW and GRIMES, JJ., concur.
McDONALD, J., concurs with an opinion.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
McDONALD, Justice, concurring.
In the original appeal I dissented on the imposition of the death penalty. Although I did not express my reasons therefor, it was because I did not feel the trial judge should have rejected the jury's recommendation of life. I still feel that way, but the applicability of the death sentence was decided by this Court. In collateral proceedings I determine whether relief should be granted solely on the merits of the postconviction application, not on my view of the appropriateness of the death penalty in the original appeal. I see no basis for relief on the habeas corpus or 3.850 motion. Hence I concur in the opinion denying relief.
BARKETT, Justice, dissenting.
The definition of cold, calculated and premeditated elaborated in Rogers was intended to ensure
the very significant distinction between simple premeditation and the heightened premeditation contemplated in section 921.145(5)(i), Florida Statutes (1981). Loss of that distinction would bring into question the constitutionality of that aggravating factor and, perhaps, the constitutionality, as applied, of Florida's death penalty statute.
*1148 Herring v. State, 446 So.2d 1049, 1058 (Fla.) (Ehrlich, J., dissenting in pertinent part) (emphasis in original), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), receded from by Rogers v. State, 511 So.2d 526 (Fla. 1987) (adopting Justice Ehrlich's approach).
I believe the incorrect and constitutionally suspect standard applied in Herring also was applied in this instance. Cold, calculated premeditation was based here on circumstantial evidence consisting entirely of the fact that Eutzy took the murder weapon from his sister-in-law in advance of the murder, evidence that the victim died of a single shot to the head at close range, lack of evidence of a struggle and lack of evidence of a robbery. This dearth of evidence is equally as consistent with an impulsive shooting, a failed robbery or a gunshot fired during a verbal argument as it is with the "careful plan or prearranged design" required by Rogers.[*] 511 So.2d at 533. Thus, I am compelled to conclude that the state did not meet beyond a reasonable doubt the burden of proof required by Rogers.
Moreover, the United States Supreme Court's decision in Johnson casts substantial doubt over the only other aggravating factor found in this case. If Eutzy's 1958 Nebraska conviction is vacated or expunged, this factor will cease to exist. The result could be that a man will be executed in Florida despite the complete lack of any valid aggravating factors, in disregard of our own and federal case law.
Finally, the trial jury recommended life and the judge's override of that recommendation was based on his belief that three strong aggravating factors existed, one of which was reversed on direct appeal. Subsequent developments in the law have cast deep suspicion on the other two, as I have noted earlier. Indeed, there is no question that if this case was decided on direct appeal today, the jury override and at least two of the three aggravating factors could not be sustained by this Court. What is fundamentally unfair for a 1989 case must also be fundamentally unfair for one tried only a few years earlier.
Accordingly, I believe fundamental justice requires us to revisit the issue, vacate the death penalty and order a new sentencing hearing using the proper standard. Unlike the majority, I cannot conclude that fundamental constitutional rights are not implicated here. The case law states over and over that death is different and must be imposed reliably, consistently, and proportionately. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Death should never be imposed where there is any significant doubt as to the reliability of the sentence, as there is here.
I also dissent for the reasons expressed in my separate opinion in Eutzy v. State, 536 So.2d 1014, 1017 (Fla. 1988) (Barkett and Kogan, JJ., dissenting).
KOGAN, J., concurs.
NOTES
[*] This conclusion is only underscored by the prosecutor's initial willingness to accept a plea of second-degree murder from Eutzy.