William EUTZY, Petitioner,

v.

Richard L. DUGGER, Respondent.

No. TCA–89–40058–WS.

United States District Court, N.D. Florida, Tallahassee Division.

Oct. 24, 1989.

Timothy C. Hester, William H. Allen, Arvid E. Roach II, James R. Murray, Covington & Burling, Washington, D.C., for petitioner.

Mark C. Menser, Asst. Atty. Gen., Kurt L. Barch, Dept. of Legal Affairs, Tallahassee, Fla., for respondent.

## I. BACKGROUND

STAFFORD, Chief Judge.

### A. *Facts*

Briefly, the facts are as follows. On February 26, 1983, William Eutzy and his sister-in-law, Laura Eutzy, were seen at the airport in Pensacola, Florida, getting into a taxicab driven by the victim, Herman Hughley. A dispatcher for the cab company for which Hughley drove testified that, at or about 6:30 p.m., Hughley reported picking up a fare at the airport with a destination in Pensacola Beach. Forty-five minutes later, Hughley reported that the destination had been changed to Fort Walton. Not long thereafter, he notified the same dispatcher that they were going to Panama City. Later the same evening, at approximately 11:00 p.m., Hughley reported his return to Pensacola.

An employee at the airport, Jacqueline Humel, testified that, when she left work at 11:00 p.m., she passed Hughley's cab parked on Tippen Avenue. Having stopped to speak to Hughley, she noticed that Eutzy was present. Hughley's body was discovered in the front seat of his cab, still parked on Tippen Avenue, shortly after 4:00 a.m. the next morning, February 27, 1983. He had been killed by a single gunshot to the back of his head.

Laura Eutzy testified that she had ridden in the back seat of the cab for several hours and, upon returning to Pensacola, had been dropped off at the Holiday Inn. Eutzy rode off with Hughley, returning to the Holiday Inn approximately thirty minutes later.

William and Laura Eutzy were picked up while trying to hitchhike out of town the day after Hughley's body was discovered. Laura Eutzy had a pistol, later proven to be the murder weapon, in her purse when she was arrested. She testified that she bought the gun early in February at Eutzy's suggestion and with his assistance. It was her practice to carry the gun in her purse for protection, but she failed to notice that the gun was missing from her purse during the weekend of the murder. She said Eutzy returned the gun to her the morning of the day they were arrested.

Eutzy was tried for first-degree murder. The jury found him guilty of first-degree premeditated murder. During the sentencing phase of trial, evidence was presented that Eutzy had a 1958 conviction for robbery. Defense counsel presented no evidence of mitigating circumstances. Despite the jury's recommendation that Eutzy be sentenced to life imprisonment without possibility of parole for twenty-five years, the trial judge sentenced Eutzy to death. His sentence was based on a finding of no mitigating factors and three aggravating factors: (1) Eutzy was previously convicted, on a plea of guilty, of a crime of violence; (2) the crime was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification; and (3) the crime was committed in the course of a robbery.

### B. *Procedural History*

Eutzy's conviction and sentence were affirmed on direct appeal by the Florida Supreme Court on September 20, 1984. *Eutzy v. State*, 458 So.2d 755 (Fla.1984), *cert. denied*, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985). On appeal, Eutzy raised five issues as follows:

1. The trial court improperly sentenced appellant to death, overriding the jury's recommendation of life imprisonment, in violation of the principles established in *Tedder v. State*, 322 So.2d 908 (Fla.1975) and subsequent decisions, and in violation of the eighth and fourteenth amendments to the United States Constitution.

2. The trial court erred in finding as an aggravating circumstance that the murder was committed in cold, calculated, and premeditated manner.

3. The trial court erred in finding as an aggravating circumstance that the murder was committed in the course of a robbery.

4. The trial court's instructions to the jury in the penalty phase were constitutionally inadequate.

5. To the extent that it authorizes the trial judge to override a jury's recommendation of life imprisonment and impose a death sentence in its stead, Florida's death penalty statute is unconstitutional as applied.

The supreme court said issue number five was not timely raised before the trial court and thus was not preserved for appeal. As to issue number four, the court said Eutzy was unable to demonstrate harm arising from the allegedly erroneous jury instructions because the jury recommended life imprisonment and not death. The court upheld the trial court's finding as to issues one and two—the finding that the murder was committed in a cold, calculated, and premeditated manner, and the finding that a jury override was appropriate under *Tedder v. State*, 322 So.2d 908 (Fla. 1975). Finally, in the absence of any record evidence that the murder occurred during a robbery, the court disallowed the aggravating factor raised in issue three.

Eutzy's first motion to vacate his conviction and sentence under Rule 3.850 of the Florida Rules of Criminal Procedure, as augmented by newly hired counsel, raised eleven claims for relief, all of which the trial court rejected after an evidentiary hearing held on May 22, 1987. Of the eleven claims, counsel abandoned four when he appealed the trial court's denial of his motion. The remaining claims presented to the Florida Supreme Court on appeal included:

1. That trial counsel was ineffective for failing to develop or present evidence in mitigation at sentencing;

2. That trial counsel was ineffective for failing to raise a *Miranda* objection to the introduction of a 1958 conviction at sentencing or to present mitigating evidence in connection with that conviction;

3. That on direct appeal, the Florida Supreme Court improperly disregarded valid mitigating circumstances that supported the jury's recommendation of life;

4. That on direct appeal the Florida Supreme Court applied an unconstitutional construction of the cold, calculated and premeditated aggravating factor;

5. That the Florida Supreme Court applied the *Tedder* jury override standard

in an arbitrary and discriminatory manner;

6. That on direct appeal he was deprived of an adequate reasoned proportionality review of his death sentence; and

7. That the trial court's reliance at sentencing upon an aggravating factor that was not supported by the evidence deprived him of due process.

The Florida Supreme Court affirmed the trial court's summary rejection of claims three through seven which the court characterized as "matters that were addressed or could have been addressed on direct appeal and are attacks and criticisms of the decision of the Florida Supreme Court." *Eutzy v. State*, 536 So.2d 1014, 1015 (Fla. 1988). The court affirmed, on the merits, the trial court's denial of Eutzy's remaining two claims of ineffective assistance of counsel.

Eutzy's first petition for writ of habeas corpus raised the issue of appellate counsel's alleged conflict of interest. This petition was denied by the Florida Supreme Court without opinion on December 4, 1986. *Eutzy v. Wainwright*, 500 So.2d 544 (Fla.1986).

Eutzy's second successive motion for Rule 3.850 post-conviction relief contained five claims for relief as follows:

1. The involvement of the victim's family in pretrial plea negotiations denied Mr. Eutzy his constitutionally guaranteed right to be free from the arbitrary and capricious imposition of the death sentence contrary to the United States Supreme Court's decision in *Booth v. Maryland*, [482 U.S. 496] 107 S.Ct. 2529 [96 L.Ed.2d 440] (1987).

2. Mr. Eutzy's death sentence must be vacated as an unconstitutional deprivation of his Sixth Amendment right to a jury trial on the elements of capital murder in accord with the decision in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir. 1988) (en banc).

3. The Florida death penalty statute is unconstitutional because it imposes an unlawful presumption that death is the

appropriate penalty contrary to the decision in *Adamson v. Ricketts.*

4. Mr. Eutzy's 1958 Nebraska conviction was secured in violation of his constitutional rights and cannot serve as a basis for his death sentence contrary to the United States Supreme Court's decision in *Johnson v. Mississippi,* [486 U.S. 578] 108 S.Ct. 1981 [100 L.Ed.2d 575] (1988).

5. Mr. Eutzy was denied his constitutionally guaranteed right to a competent psychiatric evaluation of his sanity.

On March 17, 1989, the trial court denied this second Rule 3.850 motion, finding that each of the five claims raised in the successive motion constituted an abuse of process. The Florida Supreme Court, after hearing oral argument on March 28, 1989, affirmed the trial court's decision, agreeing that all claims raised were procedurally barred. *Eutzy v. State,* 541 So.2d 1143 (Fla.1989).

On March 2, 1989, Eutzy filed with the Florida Supreme Court a petition for habeas corpus containing a single claim for relief: that Eutzy's death sentence must be vacated due to the change in Florida law on the application of the "cold, calculated and premeditated" aggravating factor. Oral argument was heard, and the petition was denied, on March 28, 1989. Rejecting petitioner's contention that there had been a change in law requiring retroactive relief, the court otherwise refused to revisit a matter that was previously settled by the affirmance of the conviction and sentence on direct appeal. *Eutzy v. Dugger,* 541 So.2d 1143 (Fla.1989).

On March 23, 1989, in light of the imminency of his execution date set for April 5, 1989, Eutzy pre-filed his petition for writ of federal habeas corpus with this court. At the time, his state remedies had not been exhausted as required by 28 U.S.C. § 2254(b). Following the Florida Supreme Court's opinion of March 28, 1989, his state claims having then been exhausted, Eutzy filed the amended petition of writ of habeas by a person in state custody which is now before the court. The amended petition contains the following claims:

1. The Florida death penalty statute, as applied in this case, is an unconstitutional deprivation of Mr. Eutzy's rights under the eighth and fourteenth amendments to the United States Constitution.

2. The execution of Mr. Eutzy's death sentence would deprive him of life without due process of law because the trial court relied at sentencing on an aggravating factor that was not supported by the evidence.

3. Mr. Eutzy was denied his constitutionally guaranteed right to the effective assistance of counsel at trial.

4. There has been a fundamental change in Florida law governing the "cold, calculated, and premeditated" aggravating factor, and it is arbitrary and capricious not to apply that new standard to Mr. Eutzy's case.

5. The involvement of the victim's family in pretrial plea negotiations denied Mr. Eutzy his constitutionally guaranteed right to be free from the arbitrary and capricious imposition of the death sentence.

6. Mr. Eutzy's death sentence must be vacated as an unconstitutional deprivation of his sixth amendment right to a jury trial on the elements of capital murder.

7. On its face and as applied, Florida's death penalty statute is unconstitutional because it imposes an unlawful presumption that death is the appropriate penalty.

8. Mr. Eutzy's 1958 Nebraska conviction was secured in violation of his constitutional rights and cannot serve as a basis for his death sentence.

9. Mr. Eutzy was denied his constitutionally guaranteed right to a competent psychiatric evaluation of his sanity.

On March 31, 1989, having determined that substantial questions have been raised in Eutzy's petition for writ of federal habeas corpus, this court entered an order staying petitioner's execution scheduled for April 5, 1989. The court having now received all papers from the parties in this case, Eutzy's claims are ripe for review.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner has challenged the effectiveness of his trial counsel's assistance at the sentencing phase of his trial. He argues that counsel was ineffective because: (1) he failed to investigate or present mitigating evidence at sentencing; and (2) he failed to raise a *Miranda* objection to the introduction of a 1958 conviction at sentencing or to present mitigating evidence in connection with that conviction. Eutzy raised both issues in the state court by motion for post-conviction relief. After holding an evidentiary hearing, the trial court denied relief on both claims and the Florida Supreme Court affirmed. Procedural default not an issue, Eutzy's claims of ineffective assistance are properly before this court.

The standard for a claim of ineffective assistance of counsel was enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* the defendant must establish that his counsel's performance at sentencing was seriously deficient and that he suffered prejudice as a result of such deficiency. 466 U.S. at 687, 104 S.Ct at 2064, 80 L.Ed.2d at 693. In *Middleton v. Dugger,* 849 F.2d 491 (11th Cir.1988), the Eleventh Circuit elaborated on the proper analysis to be made when, as here, a claim of ineffectiveness is based on an attorney's failure to present evidence of mitigating circumstances. Recognizing that an attorney has a duty to conduct a reasonable investigation for possible mitigating evidence, the Eleventh Circuit said:

> First, it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a *harmlessness review* must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

849 F.2d at 493 (emphasis in original; cites omitted).

■ Eutzy alleges that counsel's decision to forego presentation of *any* mitigating evidence at sentencing was not a tactical choice but was a function of trial counsel's complete failure to investigate potential sources of such evidence. Eutzy suggests that, had trial counsel conducted the slightest investigation, he would have uncovered a significant amount of mitigating evidence. Indeed, Eutzy's current counsel have uncovered the following:

(1) Eutzy's mother, daughter and former wife—none of whom was contacted by trial counsel for information about Eutzy—would have provided humanizing testimony concerning his non-violent, caring personality and his troubled past.

(2) Two former employers—never contacted by counsel—would have described Eutzy's outstanding performance as an employee of a Lincoln, Nebraska, newspaper, the *Lincoln Star.* Hired out of prison in 1970 based on a recommendation from the teacher of a prison reporting class, Eutzy received consistently high performance ratings and, as a result, progressed rapidly from a clerk, to a reporter, then to a copy editor, and finally to a wire editor. These same employers would have described Eutzy as a witty, congenial, likeable employee and friend.

(3) Two psychiatrists hired to examine and interview Eutzy could have testified concerning the effects of Eutzy's turbulent family history and his long-term alcoholism and amphetamine abuse. The conditions of his childhood home were poor, crowded and chaotic, and worsened by the chronic alcoholism of most of the household's adults. His father left the family before Eutzy was born, and he and his two siblings were raised by a largely-absent and alcoholic mother in a house shared by his grandmother, aunt, uncle and four cousins. Eutzy began drinking at the age of twelve. As an adult, Eutzy was hospitalized twice for psychiatric reasons, one such hospital stay having occurred in the early 1980s.

Although trial counsel indicated that he was aware that Eutzy had experienced mental difficulties, he never explored the benefits of a psychiatric examination for use at sentencing. Counsel stated in the Rule 3.850 hearing that he considered a psychological evaluation to be of no benefit on the mitigation aspect of Eutzy's sentencing. *See* document 4 at 789.

(5) Review of Eutzy's prison records would have indicated that Eutzy was a contributing member of the prison society and had an exemplary record as an inmate. A letter from the warden of the Medical Center for Federal Prisoners to Eutzy's mother, dated March 4, 1982, is illustrative of the comments made by prison officials in various of Eutzy's prison progress reports:

> William has been selected as our Inmate of the Month for February, 1982. He was selected based on his excellent work performance while assigned as a Clerk in our institutional Business Office. Bill is a congenial individual who relates very well with staff members and inmates alike. He is highly thought of and is certainly well deserving of this award.

Document 4 at 723.

■ The United States Supreme Court has relentlessly emphasized that in capital cases, the sentencer must make an individualized decision based on both the circumstances of the offense *and* the character and propensities of the offender. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *see also Harris v. Dugger*, 874 F.2d 756 (11th Cir.1989); *Armstrong v. Dugger*, 833 F.2d 1430 (11th Cir.1987). The sentencer may not be precluded from considering, as a mitigating factor, *any* aspect of a defendant's character or record that a defendant proffers as a basis for a sentence less than death. *Woodson*, 428 U.S. at 305, 96 S.Ct. at 2991, 49 L.Ed.2d at 961. The type of evidence proffered by Eutzy's current counsel is consistent with the types of evidence considered by courts to be relevant mitigating evidence. *See Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (evidence that petition-

er was well-behaved and well-adjusted in prison was relevant mitigating evidence); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (state trial judge's refusal to consider defendant's family history and emotional disturbance in mitigation in death penalty sentencing held violative of eighth and fourteenth amendments); *Harris*, 874 F.2d at 762–64 (new sentencing required where counsel failed to investigate and present the mitigating testimony of family members and minister describing Harris as a decent, loving man whose life was important to them); *Armstrong*, 833 F.2d at 1432–34 (writ issued where counsel failed to investigate and present mitigating evidence of petitioner's childhood poverty, irregular school attendance caused by petitioner's need to supplement family income, epileptic seizures, and history of nonviolence). Clearly Eutzy has demonstrated that a reasonable investigation would have uncovered relevant mitigating evidence.

■ Because the court concludes that mitigating evidence was indeed available, it must next be determined whether trial counsel's failure to offer such evidence was a tactical or strategic choice. A tactical decision to forego presentation of mitigating evidence enjoys a strong presumption of correctness which is virtually unchallengeable. *Middleton*, 849 F.2d at 493; *Smith v. Dugger*, 840 F.2d 787 (11th Cir. 1988).

■ In this case, the state court held an evidentiary hearing at which Eutzy's claims of ineffective assistance of counsel were considered. The trial judge denied relief, finding that trial counsel's decision not to present mitigating evidence was strategic. Specifically, the trial court stated:

> Based upon counsel's contact with the client and his evaluation of the circumstances and background of his client, the strategy was to prevent the past of the Defendant from becoming known and material. He opted to preserve the right to opening and closing argument in the guilt and penalty phase, and he was successful.

Document 4 at 873. Such a factual finding by the state court judge is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *See Thomas v. Zant*, 697 F.2d 977, 980 (11th Cir.1983) (state court's finding that trial counsel's decision to forego presentation of mitigating evidence was a tactical decision was "the sort of purely historical factfinding that receives the presumption of correctness under section 2254(d)"). The presumption applies unless the petitioner establishes, or it otherwise appears, that one or more of the eight statutory exceptions listed in section 2254(d) is applicable. The presumption does not apply, for example, if the state court's factual determination is not fairly supported by the record. 28 U.S.C. § 2254(d)(8).

In this case, the court finds that the record does not support the state court's finding that trial counsel's decision was tactical. A tactical, or strategic, decision implies an informed, knowledgeable, reasoned choice. Such a reasoned judgment cannot be made and options exercised unless and until an investigation into the defendant's background and character has been made. The court recognizes that counsel has to balance the good against the bad and decide whether presenting the good side of the defendant will outweigh the adverse evidence that may come in by way of cross examination or rebuttal. Certainly, if counsel feels that under the circumstances, it would adversely affect the defendant to present the positive evidence, he can and should make the strategic choice not to do so. A strategy of silence, however, may be adopted only *after* an investigation, however limited. In this case, the record reveals that counsel conducted virtually no investigation at all. Review of the transcript of counsel's testimony at the Rule 3.850 hearing indicates that trial counsel never asked the defendant himself about his family background, his marriages, his children, or his employment history, never asked the defendant about possible sources of mitigating evidence, never initiated contact with anyone to determine whether there were facts about Eutzy which could be helpful at sentencing, and never sought copies of any of Eutzy's

school, medical or prison records. The record is clear that trial counsel could not have *known* of any mitigating evidence because he never conducted even a cursory investigation to find such evidence. He, therefore, could not have made a reasoned, tactical choice that use of mitigating evidence would be more harmful than helpful. The trial judge's finding to the contrary is not fairly supported by the record, and thus is not entitled to a presumption of correctness.

■ Respondent argues that trial counsel was excused from investigating Eutzy's background because Eutzy allegedly instructed counsel that he did not want his mother—and perhaps other family members—involved. Even if the court were to accept the proposition that Eutzy restricted counsel's investigation for mitigating evidence (the record tends to refute such a proposition), Eleventh Circuit caselaw rejects the notion that a lawyer may "blindly follow" the commands of the client. *Thompson v. Wainwright*, 787 F.2d 1447 (11th Cir.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987) (defense counsel's failure to conduct any investigation of the petitioner's background, allegedly out of deference to the client's wishes, fell outside the scope of reasonably professional assistance). Although a client's wishes and directions may limit the scope of an attorney's investigation, they will not excuse a lawyer's failure to conduct *any* investigation of a defendant's background for potential mitigating evidence. *Id.* at 1451; *Thomas v. Kemp*, 796 F.2d 1322 (11th Cir.), *cert. denied*, 479 U.S. 996, 107 S.Ct. 602, 93 L.Ed.2d 601 (1986); *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). At a minimum, a lawyer must evaluate the potential avenues of investigation and then advise the client of their merit. Trial counsel in this case neglected to perform his duty to investigate and to discuss with his client the merits of alternative courses of action. Such neglect—albeit because counsel expected a different result—fell below an objective standard of reasonableness, and, as

a result, trial counsel's representation fell outside the range of competent assistance.

Having concluded that trial counsel's performance was deficient, the court must next determine whether this deficiency affected the outcome of the sentencing proceeding. Under *Strickland,* petitioner can prevail on his claim of ineffective assistance of counsel only if he can establish that he was prejudiced by counsel's failure to investigate and present mitigating evidence. Specifically, Eutzy must show that "there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Mitchell v. Kemp,* 762 F.2d 886 (11th Cir.1985) (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698), *cert. denied,* 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987). A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Because this case involved a jury override, Eutzy must show enough to undermine the court's confidence in the trial judge's decision to reject the jury's recommendation of life. *Porter v. Wainwright,* 805 F.2d 930 (11th Cir.1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987).

In Florida, in order for a judge to reject a sentencing jury's recommendation of life imprisonment, the facts justifying a death sentence must be so clear and convincing that virtually no reasonable person could differ as to the appropriateness of the death penalty. *Tedder v. State,* 322 So.2d 908, 910 (Fla.1975). Eutzy argues that, had trial counsel prepared and presented a reasonable case in mitigation, had he focused properly on the individualized characteristics of petitioner, the trial judge could not have concluded that the jury's recommendation of life imprisonment lacked support or that the facts were "so clear and convincing that virtually no reasonable person could differ" as to the appropriateness of the death penalty. *Id.* Further, even if the judge were to make the same decision, Eutzy argues that the Florida Supreme Court on appeal would have been obliged to find that the jury override was improper under the *Tedder* standard.

Recognizing that prejudice is more easily shown in jury override cases because of the deference shown to the jury recommendation, *Harich v. Dugger,* 844 F.2d 1464 (11th Cir.1988) (adopting certain sections of previously vacated *Harich v. Wainwright,* 813 F.2d 1082, 1093 n. 8 (11th Cir.1987)), *cert. denied,* — U.S. —, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989), the court finds petitioner's arguments persuasive. The trial judge in this case overrode the jury's recommendation based on a record which he said contained *no* mitigating circumstances. Because the standard which applies in jury override cases is very strict, because there indeed were mitigating circumstances which cannot be characterized as insubstantial and which could have been presented had counsel investigated and chosen to do so, and because the aggravating circumstances do not clearly outweigh these mitigating circumstances, the court's confidence in the judge's decision to reject the jury's recommendation is undermined. The court notes with some concern that the trial judge indicated at the Rule 3.850 hearing that he thought evidence as to a defendant's background, removed in time from the offense, would not be relevant or material as a mitigating factor and perhaps not admissible over objection. *See* document 4 at 746–48. Given such posture, perhaps the judge would have sentenced Eutzy to death despite a proffer of evidence as to Eutzy's background. Federal law, of course, recognizes the relevance of such evidence, and although a judge may decide what weight to give the evidence, he may not give it *no* weight. *Eddings,* 455 U.S. at 115, 102 S.Ct. at 877, 71 L.Ed.2d at 11. Assuming, as the court must, that the trial judge would correctly apply the law, this court cannot say that there is no reasonable probability that the sentence would have been different had the proposed mitigating evidence been in the record to augment and additionally support the jury's recommendation. Accordingly, the court concludes that Eutzy was prejudiced by counsel's ineffective assistance and is,

therefore, entitled to a new sentencing hearing before the trial judge.

Eutzy also argues that trial counsel was ineffective for failing to raise a *Miranda* objection to the introduction of a post-arrest statement made by Eutzy in response to questions of a corrections officer during booking. While this court has some concern about the trial judge's conclusions as to the *Miranda* issue, such issue—raised as an ineffective assistance of counsel claim—has been rendered moot by the court's holding that Eutzy is entitled to a new sentencing hearing before the trial judge.

## III. APPLICATION OF THE FLORIDA DEATH PENALTY STATUTE

In Part I of his amended petition, Eutzy argues that his death sentence must be vacated because "[t]he Florida death penalty statute, as applied in this case, is an unconstitutional deprivation of Mr. Eutzy's rights under the eighth and fourteenth amendments to the United States Constitution." *See* document 10, p. 19. More specifically, petitioner argues that (1) the state trial court as well as the Florida Supreme Court disregarded mitigating evidence that—as a matter of federal constitutional law—provided valid support for the jury's recommendation of a life sentence; (2) the Florida Supreme Court applied the jury-override standard in an arbitrary and discriminatory manner; and (3) the Florida Supreme Court applied an unconstitutional construction of the "cold, calculated, and premeditated" aggravating factor. The state argues that these claims are procedurally barred and, in support of such argument, directs the court's attention to the Rule 3.850 proceedings in which both the trial court and the Florida Supreme Court rejected these same claims because they were "matters that were addressed or could have been addressed on direct appeal and are attacks and criticisms of the decision of the Florida Supreme Court." *See* document 10, appendix, pp. 878 and 1126.

The problem with the state's procedural default argument is found in the "was raised" or "could have been raised" dichotomy. Where, in fact, a federal claim was raised on direct appeal, it was neces-

sarily ruled on whether the state court explicitly addressed it or not. Although foreclosed from state collateral attack on *res judicata* grounds, such claim would be subject to review in a federal habeas case as an exhausted claim. On the other hand, where a federal claim could have been raised on direct appeal, but was not, the claim would be barred not only from state collateral review but also from federal habeas review. *Booker v. Wainwright*, 764 F.2d 1371 (11th Cir.), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985) (Florida's rule against collateral review of matters which should have been raised on direct appeal is an adequate ground under state law to bar federal habeas corpus review). The distinction, in other words, makes little difference to a state court because collateral review by the state court is precluded in either case. To a federal court, however, the distinction is important. A "was raised" claim is reviewable; a "could have been raised" claim is not.

Despite the importance of the distinction to the federal courts, the state courts in this case failed to specify which claims were barred for which reason. Due to such failure and the resulting ambiguity in the state court's decision, this court cannot determine from the 3.850 rulings which claims the state court intended to bar on procedural default grounds and which claims the state court intended to bar on *res judicata* grounds. For the same reason, the state cannot rely on the 3.850 rulings to support its claim of procedural bar. Instead, in deciding whether to treat any or all of Eutzy's Part I claims as procedurally barred, this court must either (1) examine the state court record to determine whether Eutzy, on direct appeal, alerted the Florida Supreme Court to the substance of his federal claims; or (2) apply the "plain statement" rule adopted by the United States Supreme Court in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (where the state court both noted a procedural default and addressed—and rejected—the merits of a habeas petitioner's federal claim, the claim was subject to federal court review because the state court did not "clearly and

expressly" rely on waiver as an independent and adequate state ground for rejecting the claim). Without deciding which method is appropriate under the facts of this case, and assuming, without deciding, that Eutzy's Part I claims are subject to federal court review, this court must nevertheless reject the claims as being without merit.

Eutzy does not challenge Florida's death penalty scheme—in particular, the jury override provision—as a general matter. Indeed, the Supreme Court has expressly upheld the constitutionality of Florida's capital sentencing process. *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (upholding Florida's override scheme); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (upholding Florida's death penalty statutes). Here, Eutzy argues that Florida's death penalty statutes, as applied in his case, violated his eighth and fourteenth amendment rights.

■ Eutzy first argues that his death sentence was imposed in disregard of valid mitigating circumstances that supported the jury's recommendation of a life sentence. Specifically, he contends that the Florida courts failed to consider in mitigation: (1) Eutzy's age; (2) Laura Eutzy's involvement in the crime; and (3) the nature of the crime itself. Eutzy points to federal law which holds that the sentencer must not only be permitted to consider nonstatutory mitigating evidence, he also may not refuse to consider, *as a matter of law*, such evidence. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Because both the trial court as well as the Florida Supreme Court found there to be no mitigating factors in Eutzy's case, Eutzy suggests that they refused to consider and give effect to mitigating evidence recognized as valid under federal law. Such refusal, he argues, amounts to a violation of his constitutional rights and requires a vacation of his death sentence. The court does not agree.

■ While Eutzy is certainly correct in noting that a sentencer may not refuse to consider, as a matter of law, nonstatutory mitigating evidence, he fails to mention that the sentencer is permitted to give such

evidence appropriate weight. *Eddings*, 455 U.S. at 115, 102 S.Ct. at 877, 71 L.Ed.2d at 11. In other words, the sentencer must consider the evidence, but upon evaluation of that evidence, he may find it wanting as a matter of fact. Importantly, such a determination is left to the state courts, and a federal court will not re-evaluate the weight accorded to particular aggravating or mitigating factors, provided, as in this case, both the death penalty statute and the sentencing hearing meet relevant constitutional requirements. *See Magwood v. Smith*, 791 F.2d 1438, 1449 (11th Cir.1986).

■ Federal law requires the sentencer to consider, as mitigating evidence, only those facts which are relevant to the defendant's character or background, or the circumstances of the particular offense. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Eutzy argues that the state court erred by failing to consider the possibility that the jury could have harbored lingering doubt as to Eutzy's guilt. Eutzy, however, cites no case, and the court has found none, which teaches that federal law recognizes lingering doubt as a mitigating factor. Indeed, just the opposite is indicated in *Franklin v. Lynaugh*, 487 U.S. 164, 174, 108 S.Ct. 2320, 2327, 101 L.Ed.2d 155, 166 (1988), where the Supreme Court stated that its prior decisions do not recognize a constitutional right to have residual or lingering doubts over a defendant's guilt considered as a mitigating factor because such doubts are not over any aspect of a defendant's "character," "record," or "circumstance of the offense."

In this case, after Eutzy declined to present mitigating evidence at his sentencing hearing, the trial judge made his sentencing decision based on a finding of three aggravating factors and no mitigating factors. The Florida Supreme Court reviewed petitioner's sentence and affirmed the trial court's decision to override the jury's recommendation of a life sentence despite disallowing one of the three aggravating factors relied upon by the trial court. Like the trial court, the Florida Supreme Court determined that there were

no mitigating factors. Nothing in the record indicates that either the trial court or the Florida Supreme Court labored under a mistaken notion that consideration of the factors now urged by petitioner was precluded as a matter of law. Rather, it appears that both courts concluded that these factors—Eutzy's age (43), the involvement of his alleged accomplice, and the facts of the crime itself—had no mitigating value under the facts in this particular case. This court is unable to say that their decision as to these factors was in disaccord with constitutional principles relating to sentencing in capital cases.

■ As a second claim in Part I of his petition, Eutzy argues that the Florida Supreme Court failed to apply, in a manner consistent with prior decisions, the jury override standard articulated in *Tedder v. State*, 322 So.2d 908 (Fla.1975). He contends that such alleged inconsistent application of the standard led to an arbitrary imposition of the death penalty in this case. The court, however, is again unconvinced. Where, as here, state courts have acted through a properly drawn statute with appropriate standards to guide discretion, federal courts will not undertake a case-by-case comparison of a given case with other prior state court death penalty cases. *Spinkellink v. Wainwright*, 578 F.2d 582, 604–605 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). Absent such a review, there is nothing in this record which indicates that the Florida Supreme Court, as the ultimate authority on Florida law, applied Florida's jury override standard in an arbitrary or capricious manner.

As his last claim in Part I of his petition, Eutzy contends that the Florida Supreme Court applied an unconstitutional construction of one of the aggravating factors enumerated in Florida's death penalty statute. Section 921.141(5)(i) of that statute allows a sentencing court to find an aggravating factor where "the ... homicide ... was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." Eutzy claims that, in his case, the Florida Supreme Court failed to give this factor the narrow construction required both under Florida law,

see, e.g., *Card v. State*, 453 So.2d 17, 23 (Fla.1984) (under section 921.141(5)(i), premeditation must rise to a level beyond that which is required for a first degree murder conviction), *cert. denied*, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), and under federal law. *See Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235, 249 (1983) ("an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder"). Such failure, Eutzy says, resulted in an arbitrary and capricious imposition of the death sentence proscribed by the eighth and fourteenth amendments.

As the Eleventh Circuit noted in *Harich v. Wainwright*, 813 F.2d 1082, 1102 (11th Cir.1987), *adopted en banc in pertinent part*, 844 F.2d 1464, 1469 (11th Cir.1988), the Florida Supreme Court has held that section 921.141(5)(i) requires a greater, level of premeditation and cold-bloodedness than is required to obtain a first degree murder conviction. This limiting construction permitted the Eleventh Circuit to hold, when confronted with the issue, that section 921.141(5)(i) "is a facially valid aggravating circumstance because it genuinely narrows the class of persons eligible for the death penalty." *Harich*, 813 F.2d at 1102. A facial attack thus unavailable, Eutzy instead attacks the cold, calculated, and premeditated factor as applied in his case.

Given an as-applied challenge, this court must remember that its role is not to second-guess the state courts' interpretation of facts that reasonably fit within the statutory language. The issue here is not how his court would have decided the facts; the issue is whether any rational factfinder, given the evidence in Eutzy's case, could have found the existence of the cold, calculated, and premeditated aggravating factor. Applying such a standard of review, this court must conclude that petitioner has not demonstrated that the state applied this factor in an unconstitutionally arbitrary and capricious manner. A rational factfinder could have concluded from the

evidence presented that: (1) Eutzy procured the murder weapon, a gun, in advance of the murder; (2) the victim, a cab driver previously unknown to Eutzy, took Eutzy on an extended drive the evening of the murder and was owed a substantial cab fare; (3) Eutzy shot the victim once in the back of the head, execution style; and (4) there was no sign of a struggle. Under these circumstances, it was neither irrational nor arbitrary to apply the "cold, calculated, and premeditated" aggravating factor.

## IV. DENIAL OF DUE PROCESS

 In Part II of his amended petition, Eutzy seeks a new sentencing on the grounds that his death sentence deprives him of life without due process of law because the trial court relied at sentencing on an aggravating factor which the Florida Supreme Court later ruled was not supported by the evidence. In support of his claim, Eutzy cites two cases in which the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact. *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In *Tucker*, in imposing sentence upon a defendant convicted of bank robbery, the trial court gave explicit consideration to the defendant's record of prior convictions, two of which were later held to be constitutionally invalid having been obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In *Townsend*, on an uncounseled plea of guilty to burglary and armed robbery, the defendant was sentenced by a judge who erroneously counted as prior convictions one charge which was dismissed and two charges on which the defendant had been found not guilty. In both cases, there was misinformation of constitutional magnitude before the court—material misinformation which the trial courts accepted as fact. The trial courts' reliance on such misinformation implicated due process concerns which necessitated the setting aside of defendants' sentences.

In this case, the trial court concluded from the evidence before him that the murder occurred during the course of a robbery. Because the Florida Supreme Court held that there was insufficient evidence to support this factor, Eutzy argues that the trial court relied upon a material false assumption of fact which, under the teachings of *Tucker* and *Townsend*, requires a remand for new sentencing. Unlike in *Tucker* and *Townsend*, however, none of the evidence before the trial court in this case was improper or false. Rather, the trial judge drew an erroneous conclusion—a conclusion that was not sufficiently supported by the evidence before him. That the evidence was insufficient to support the conclusion that a robbery had occurred does not suggest that the sentencing court considered any false or improper evidence. The teachings of *Tucker* and *Townsend*, therefore, are not controlling here.

The Florida Supreme Court has considered the question of whether a defendant must be resentenced when the trial court erroneously considers improper aggravating factors. In *Elledge v. State*, 346 So.2d 998 (Fla.1977) (sentence of death vacated where the trial court considered an unauthorized nonstatutory aggravating factor), the supreme court concluded that the key to determining whether such error requires resentencing is the presence or absence of mitigating factors. If some mitigating circumstances exist, as they did in *Elledge*, remand is generally necessary because the reviewing court cannot determine whether the result of the required weighing process would have been different but for the error. *Elledge*, 346 So.2d at 1002–1003. If, on the other hand, the trial court properly finds that there are no mitigating circumstances, the supreme court engages in a harmless-error analysis. *See, e.g., Hardwick v. State*, 521 So.2d 1071 (Fla.), *cert. denied*, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). Such analysis may indicate that remand is not necessary because one or more valid statutory aggravating factors will always outweigh the complete absence of mitigating circumstances, *see, e.g., Hardwick*, 521 So.2d at

1076–1077 (error harmless, and remand unnecessary, where reversal of two aggravating factors would not have altered the result in light of the *particular* valid aggravating factors remaining in the case and the absence of any mitigating factors), or it may indicate that remand is advisable where, for example, only one aggravating factor is left standing and that factor is a relatively weak factor. *See, e.g., Lewis v. State,* 398 So.2d 432 (Fla.1981) (death sentence vacated and case remanded where, after three aggravating factors were found to be erroneous, the only factor which remained was that the appellant committed the capital felony while under a sentence of imprisonment).

Like the Florida Supreme Court, the United States Supreme Court has held that a death sentence can stand where one or more, but not all, aggravating factors are found to be invalid. *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In *Stephens,* a death sentence was upheld despite the fact that one of three aggravating factors was held to be invalid because it was unconstitutionally vague. In *Barclay,* the Supreme Court held that the trial court's consideration of an improper aggravating factor—improper under Florida law because it was not a *statutory* aggravating factor—did not render the death sentence unconstitutional because it was harmless error under state law. Neither case considered the question of whether resentencing is mandated where the trial court considered an aggravating factor which was not supported by the evidence. That question, however, has been considered by the Eleventh Circuit in *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).

In *Ford,* the court affirmed denial of habeas corpus relief to a petitioner whose sentence of death was, in part, based upon two aggravating circumstances which, according to the Florida Supreme Court, lacked evidentiary support. Under the rule announced in *Elledge,* the Florida Supreme Court upheld the sentence because five valid aggravating factors remained and there were no mitigating circumstances. In two separate opinions, a majority of the Eleventh Circuit judges concluded that the Florida Supreme Court's review achieved the goals of rationality, consistency and fairness required under federal law. Accordingly, the Eleventh Circuit held that resentencing was not compelled under the constitution.

In the case *sub judice,* the Florida Supreme Court upheld Eutzy's death sentence despite the fact that it invalidated one of the aggravating factors relied upon by the trial court. The supreme court said:

> No evidence of mitigating circumstances was presented for the jury to consider.... Faced with two validly applied aggravating factors and no valid mitigating circumstances, either statutory or non-statutory, we find no reason to disturb the sentence imposed by the trial court. We find from a comparison of past first-degree murder cases that the sentence is consistent with that imposed for similar homicides.

*Eutzy v. State,* 458 So.2d 755 (Fla.1984), *cert. denied,* 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985). Review of *Barclay, Stephens,* and *Ford,* along with review of the Florida death penalty statute, which statute was specifically upheld by the United States Supreme Court in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), convinces this court that Eutzy's due process rights were not violated either by the trial court's consideration of an aggravating factor which lacked evidentiary support or by the Florida Supreme Court's decision to let the sentence stand. Accordingly, this court must deny relief based on the claim raised in Part II of Eutzy's amended petition for writ of habeas corpus.

### V. OTHER CLAIMS

Eutzy raises six claims in Part IV of his amended petition for writ of habeas corpus. Of these six claims, five were raised before the trial court in Eutzy's second successive *motion for Rule 3.850 post-conviction relief. The trial court denied Eutzy's motion, finding that each of the five claims raised was procedurally barred.

The Florida Supreme Court affirmed the trial court's decision, agreeing that all claims raised were procedurally barred. *Eutzy v. State,* 541 So.2d 1143 (Fla.1989). Because the state courts clearly relied on procedural bar as an independent state basis for disposition of these five claims, there can be no federal habeas review unless Eutzy can show "cause" for the default and "prejudice attributable thereto." *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Because the court concludes that Eutzy has not shown adequate "cause" for his failure to timely raise these claims in state court, Claims (B) through (F) in Part IV of Eutzy's amended petition shall not be addressed here.

The remaining claim in Part IV of the petition—that there has been a fundamental change in Florida law governing the "cold, calculated, and premeditated" aggravating factor and it is arbitrary and capricious not to apply that new standard to Eutzy's case—was rejected by the Florida Supreme Court when raised in Eutzy's second state-court petition for writ of habeas corpus. Absent any federal law error, this court will not question the Florida courts' interpretation of state law. Finding no such error, the court concludes that Eutzy is not entitled to relief on Claim A in Part IV of his amended petition.

## VI. CONCLUSION

As discussed above, the court concludes that petitioner has satisfied both the performance and prejudice prongs of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), thereby demonstrating that he received ineffective assistance of counsel during his capital sentencing hearing. Eutzy's other claims of error are without merit. Accordingly, it is ORDERED:

1. The petition for writ of habeas corpus as to Eutzy's death sentence is hereby GRANTED.

2. The death sentence is vacated subject to a new sentencing hearing before the trial court within a reasonable period of time. At that hearing, both parties may present all available evidence in aggravation or mitigation relevant to the issue of the appropriate sentence in this case. Although no jury is to be impaneled, Eutzy will have the benefit of the first jury's recommendation of life.

DONE AND ORDERED.